# 𝕴n the 𝖀nited 𝕾tates 𝕮ourt of 𝕱ederal 𝕮laims

No. 10-627 C
(Filed: June 3, 2011)
**FOR PUBLICATION**

| | |
|---|---|
| ANTONINO EUGENE LYONS, | Justice for All Act of 2004; 28 U.S.C. |
| | §§ 1495 and 2513; Statute's Alleged |
| Plaintiff, | Retroactivity; Scope of Congressional |
| | Waiver of Federal Sovereign Immunity |
| v. | |
| | |
| THE UNITED STATES, | |
| | |
| Defendant. | |

Robert R. Berry, Viera, Florida, for plaintiff.

Steven M. Mager, Trial Attorney, Steven J. Gillingham, Assistant Director, Jeanne E. Davidson, Director, Commercial Litigation Branch, Tony West, Assistant Attorney General, Civil Division, United States Department of Justice, Washington, D.C., for defendant.

## OPINION AND ORDER

GEORGE W. MILLER, Judge

Pursuant to 28 U.S.C. §§ 1495 and 2513, plaintiff Antonino ("Nino") Eugene Lyons has filed a claim seeking compensation for his unjust conviction and imprisonment. Plaintiff requests $137,397.26 in damages for the two years and 273 days he spent wrongly incarcerated. Compl. at 2, 4 (docket entry 1, Sept. 16, 2010). Conceding that plaintiff is eligible for compensation, defendant has filed a motion for partial summary judgment pursuant to Rule 56 of the Rules of the Court of Federal Claims ("RCFC"), arguing that the maximum compensation in this case is set by the version of 28 U.S.C. § 2513 in effect until 2004, which limited total damages to $5000. Def.'s Mot. Summ. J. at 5-6 (docket entry 7, Nov. 18, 2010). In his response brief, plaintiff argues that the Court should apply the current version of § 2513, which caps compensation at $50,000 per year of imprisonment, and plaintiff requests that the Court grant summary judgment in his favor on that issue. Pl.'s Resp. to Def.'s Mot. Summ. J. at 10 (docket entry 8, Dec. 20, 2010).[1]

---

[1] Though styled simply as motions "for summary judgment," the parties' motions are actually motions for partial summary judgment. Each seeks the resolution of a single issue of law, i.e., the maximum allowable compensation in this case. After resolving that question, the

There are no genuine issues of material fact relevant to the parties' motions. For the reasons set forth below, the Court determines that the current version of § 2513 applies to Mr. Lyons's lawsuit. As a result, plaintiff is entitled to judgment as a matter of law, and his motion for partial summary judgment is granted. Defendant's motion for partial summary judgment is denied.

## I.    Background

Until August 2001, Mr. Lyons was a longstanding resident of Rockledge, Florida, where he lived with his wife and two children. *United States v. Lyons*, 726 F. Supp. 2d 1359, 1360 (M.D. Fla. 2010). He was a respected entrepreneur who managed several local businesses and participated in programs for low-income children. *Id.* He had no criminal record and did not consume alcohol or use illegal drugs. *Id.* The community viewed him as a "leader and a role model." *Id.*

On August 23, 2001, Mr. Lyons was arrested and charged with eighteen drug, firearms, carjacking, and counterfeit currency-related offenses. *Id.* at 1360 n.1. He pleaded not guilty. *Id.* at 1360-61. On November 26, 2001, following a jury trial, Mr. Lyons was convicted on twelve of the counts, including one for conspiracy to possess cocaine with intent to distribute. *Id.* at 1361 & n.3; *United States v. Lyons*, 352 F. Supp. 2d 1231, 1241 & n.13 (M.D. Fla. 2004). The Government's case against Mr. Lyons was based almost exclusively on testimony from incarcerated felons, to whom, it was later learned, the Government had promised to pursue sentence reductions in exchange for their testimony against Mr. Lyons. *Id.* at 1361, 1363, 1364.

A sentencing hearing commenced on March 14, 2002, but before sentence was imposed, the court continued the proceeding so that Mr. Lyons could secure new counsel. *Id.* at 1360. In the ensuing months, evidence came to light suggesting that in prosecuting Mr. Lyons, the Government may have withheld crucial exculpatory evidence and committed other ethical violations. *Id.* On May 22, 2002, the district court granted Mr. Lyons's motion for a new trial, *id.* at 1362, but the United States Court of Appeals for the Eleventh Circuit reversed the district court's ruling on March 7, 2003, *id.* at 1363. Nonetheless, it soon became clear that the Government had indeed withheld key evidence in the case, which, if disclosed, would have significantly undermined the prosecution's case for at least the most serious charge against Mr. Lyons, possession with intent to distribute cocaine. *Id.* at 1363-64. Specifically, "the most damning testimony against Lyons had come from people who had been allowed, if not encouraged, to lie under oath." *Id.* at 1360. As a result, in early May 2004, the Government moved to vacate the jury verdict on the charge of conspiracy to possess cocaine with intent to distribute, which the district court granted. *Id.* at 1364. On May 24, 2004, approximately two

_____

Court must still determine the appropriate amount of compensation due to plaintiff. Except for defendant's statement that "the parties should be able to reach an agreement or stipulate to damages after a ruling" on the pending motions, Def.'s Reply Br. 3 n.2 (docket entry 13, Jan. 7, 2011), the parties do not discuss the amount of compensation due to plaintiff. Because the Court's ruling therefore will not resolve all the issues in this case, the motions are properly regarded as seeking only partial summary judgment. *See* RCFC 56(d)(2).

years and nine months after his original arrest and incarceration, Mr. Lyons was released from prison.  *Id.*

Mr. Lyons then moved to have the remaining charges vacated.  *Id.*  In its ruling on his motion, the district court found that in prosecuting Mr. Lyons, the Government had breached its ethical duties as set forth in *Brady v. Maryland*, 373 U.S. 83 (1963), and in *Giglio v. United States*, 405 U.S. 150 (1972).  *Lyons*, 352 F. Supp. 2d at 1244 (finding that "by some mixture of negligence, recklessness, and wil[l]fulness, the Government utterly failed in its prosecutorial duties").  The court determined that "[t]he Government's protracted course of misconduct caused extraordinary prejudice to Lyons, exhibited disregard of the Government's duties, and demonstrated contempt for this Court."  *Id.* at 1251.  The court concluded that Mr. Lyons had not received a fair trial and, on September 30, 2004, granted his motion to dismiss all the remaining charges.  *Id.* at 1252.

The 1938 Unjust Conviction Law, Ch. 266, 52 Stat. 438 (1938) (current version at 28 U.S.C. §§ 1495, 2513), which entitles certain persons who have been wrongfully convicted and imprisoned for federal crimes to apply for monetary compensation, was in effect on September 30, 2004.  In its 1938 through September 2004 form, the Unjust Conviction Law set maximum compensation at $5000, regardless of the length of the wrongful incarceration.  *See id.* § 4.

Nine days after the district court dismissed the charges against Mr. Lyons, on October 9, 2004, Congress passed the Justice for All Act of 2004 ("Justice for All Act" or "the Act"), which took effect on October 30, 2004.  Pub. L. No. 108-405, 118 Stat. 2260, 2293 (2004) (codified in part at 28 U.S.C § 2513(e)).  Section 431 of the Act amended the Unjust Conviction Law, 28 U.S.C. § 2513(e), to raise the cap on compensation from $5000 total to $50,000 *per year of imprisonment* for those receiving sentences other than the death penalty.  Pub. L. No. 108-405, § 431 ("§ 431"); § 2513(e) (2006) ("The amount of damages awarded [under § 1495] shall not exceed . . . $50,000 for each 12-month period of incarceration . . . .").

Over five years after the Justice for All Act took effect and all the charges against Mr. Lyons had been dismissed, Mr. Lyons petitioned the district court for a certificate of innocence pursuant to § 2513.  *Lyons*, 726 F. Supp. 2d at 1364.  The Government tacitly admitted its prosecutorial wrongdoing but opposed Mr. Lyons's petition, arguing that he was nonetheless still guilty on all but one of the counts.  *Id.* at 1365.  On July 20, 2010, the district court issued a written opinion analyzing the trial evidence against Mr. Lyons and granting his motion for a certificate of innocence on all the charges.  *Id.* at 1369.  The Government did not appeal.

Mr. Lyons now seeks compensation for his unjust conviction and imprisonment pursuant to 28 U.S.C. §§ 1495 and 2513, which permit the Court of Federal Claims to award compensation to "any person unjustly convicted of an offense against the United States and imprisoned."  § 1495.  Section 2513 sets the standard for recovering compensation, the required procedures, and the maximum amount of compensation.

The question presented here is which statute—the 1938 Unjust Conviction Law or the 2004 Justice for All Act—governs the maximum amount of compensation Mr. Lyons may receive.

## II.     Legal Standard

Under Rule 56 of the RCFC, summary judgment is appropriate "when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Brubaker Amusement Co. v. United States*, 304 F.3d 1349, 1356 (Fed. Cir. 2002) (citing RCFC 56(c)).  When parties cross-move for summary judgment, the Court evaluates each motion according to the same standards.  *Mingus Constructors v. United* States, 812 F.2d 1387, 1391 (Fed. Cir. 1987) ("[T]he court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.") (citing *Schwabenbauer v. Bd. of Educ.*, 667 F.2d 305, 313-14 (2d Cir. 1981)).  That is, the court must "view all inferences drawn from the underlying facts in a light most favorable to the party against whom summary judgment is to be entered." *U.S. Sur. Co. v. United States*, 83 Fed. Cl. 306, 309 (2008) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

## III.    Discussion

The parties agree that Mr. Lyons has provided a certificate of innocence as required by § 2513(b), and the Court therefore possesses jurisdiction over his claim.  *Lyons*, 726 F. Supp. 2d at 1369 ("[T]he Court concludes that Lyons has satisfied the requirements of 28 U.S.C. § 2513 and may bring a claim under 28 U.S.C. § 1495 because he is actually innocent of the charges brought against him in this case."); *cf. Zakiya v. United States*, 79 Fed. Cl. 231, 235 (2007).  There is no doubt that Mr. Lyons is entitled to some damages; the only question is the amount.

Two sets of principles are pertinent to the issue:  (A) principles of statutory construction governing the retroactive effect and application of statutes or regulations, and (B) principles governing interpretation of congressional waivers of sovereign immunity.  The Court will first analyze whether applying the Justice for All Act to Mr. Lyons's case would work a retroactive effect.  The Court will then consider the impact of federal sovereign immunity.

> A.      *No Retroactivity Results from Applying the Justice for All Act to Mr. Lyons's Claim*

The question the parties have framed for the Court is whether statutory construction principles governing retroactivity permit application of the Justice for All Act to Mr. Lyons's claim.  Whether this analysis is actually necessary is uncertain.  At least one federal court has found retroactivity analysis inapposite where the Government is the defendant, asking only whether sovereign immunity has been properly waived.  *See Brown v. Sec'y of Army*, 78 F.3d 645, 650-51 (D.C. Cir. 1996); *Nichols v. Pierce*, 740 F.2d 1249, 1257 (D.C. Cir. 1984).  The Supreme Court has cited with approval cases applying retroactivity analysis to claims against the Government, while elsewhere saying that the inquiry is "most helpful" in cases involving private parties.  *Compare Landgraf v. USI Film Prods.*, 511 U.S. 244, 271 n.25 (1994), *with Republic of Austria v. Altmann*, 541 U.S. 677, 696 (2004).  *See also White v. United States*, 191 U.S. 545 (1903); *Avila v. Office of Pers. Mgmt.*, 79 F.3d 128 (Fed. Cir. 1996).  The Court will therefore undertake a retroactivity analysis, albeit aware that precedent focuses upon private parties, and the analysis therefore only imperfectly applies to Congress's changes to governmental liability.

The federal courts, including the Supreme Court, have repeatedly addressed what it means for a statute or regulation to have "retroactive" (sometimes referred to as "retrospective") effect. Retrospective legislation includes "all statutes, which, though operating only from their passage, affect vested rights and past transactions." *Soc'y for Propagation of the Gospel v. Wheeler*, 22 F. Cas. 756, 767 (C.C.N.H. 1814) (No. 13,156) (Story, J.). Put another way, "every statute which takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past, must be deemed retrospective." *Id.*

Since Justice Story's seminal formulation, legal interpretations of retroactivity have continued to evolve. Though the Supreme Court has not always precisely defined the term, much of the Court's jurisprudence has stressed that retroactive application of law is disfavored. As a result, the Court has often declined to apply statutes to cases where those statutes were enacted after the litigation had commenced. *See, e.g.*, *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988); *Bennett v. New Jersey*, 470 U.S. 632, 638 (1985).

A key 1974 holding, however, marked a departure from that approach. In *Bradley v. School Board of Richmond*, the Court stated that a court must apply the "law in effect at the time it renders its decision," unless it would "result in manifest injustice or there is statutory direction or legislative history to the contrary." 416 U.S. 696, 711 (1974).

Twenty years later, in a lengthy exploration of its "law in effect" and retroactivity jurisprudence, the Court in *Landgraf v. USI Film Products* clarified this apparent contradiction. 511 U.S. 244. The Court cautioned that "[a] statute does not operate 'retrospectively' merely because it is applied in a case arising from conduct antedating the statute's enactment or upsets expectations based in prior law." *Id.* at 269 (internal citations omitted). The Court noted that "[a]ny test of retroactivity will leave room for disagreement in hard cases, and is unlikely to classify the enormous variety of legal changes with perfect philosophical clarity." *Id.* at 270. Despite the acknowledged difficulty of the task, the *Landgraf* Court articulated a series of principles to guide the courts in determining whether a statute operates retroactively. *Landgraf* characterized a "retrospective" regulation as one that "attaches new legal consequences to events completed before its enactment." *Id.* In a footnote immediately preceding that statement, however, the Court observed that "a statute 'is not made retroactive merely because it draws upon antecedent facts for its operation.'" *Id.* at 269 n.24 (quoting *Cox v. Hart*, 260 U.S. 427, 435 (1922)).

Under *Landgraf*, the Court's first task is to "determine whether Congress has expressly prescribed the statute's proper reach." *Id.* at 280. If the statute "contains no such express command," the Court must then determine whether the new rule would have "retroactive effect." *Id.* If the answer is yes, then the "traditional presumption" against retroactive application applies unless there is "clear congressional intent" favoring retroactive application of the statute. *Id.*

  1. <u>Congress Has Not Expressly Prescribed the Statute's Reach</u>

The Court must first determine "whether Congress has expressly prescribed the statute's proper reach." *See id.* The compensation of wrongfully convicted persons is inherently backward-looking, and in passing both the Justice for All Act and the Unjust Conviction Law,

Congress referred to the "many cases of the innocent who served years in prison, only to find later that injustice was done." H.R. Rep. No. 75-2299 (1938); S. Rep. No. 107-315, at 37 (2002) ("Putting one's life back together after such an experience is difficult enough, even with financial support. . . . To help repair the lives that are shattered by wrongful convictions, the bill raises the Federal cap on compensation . . . .") (reporting on substantively identical bill entitled Innocence Protection Act of 2002). Then, as now, books were written detailing the injustices done to innocent people through wrongful conviction. *See* H.R. Rep. No. 75-2299 (1938) (citing Edwin Borchard, *Convicting the Innocent* (1932)); Brandon L. Garrett, *Convicting the Innocent: Where Criminal Prosecutions Go Wrong* (2011).

The Court believes it would be a great surprise to the Congresses of 1938 and 2004 to discover that the law they passed—after listening to the unfortunate stories of those who had lost years of their lives to incarceration—might not assist any person who was wrongfully imprisoned at that time, but possibly only those whom the Government would erroneously convict in the future. *See* H.R. Rep. No. 108-711, at 128 (2004) (noting that Justice for All Act's wrongful incarceration damages cap adjustment is "of extreme importance to those *that have been subjected to a wrongful conviction*" (emphasis added)); *id.* at 130-31 ("Those charged with false accusations and imprisoned based on wrongful convictions are also victims. . . . Ultimately, this bill is . . . about justice for all victims. And it's about innocent people like . . . Kirk Bloodsworth" (who had previously been wrongfully convicted and later cleared of the charges)).

Nonetheless, the language of the Justice for All Act does not expressly provide that the law applies to wrongful convictions occurring in the past. Section 431 of the Justice for All Act states:

> INCREASED COMPENSATION IN FEDERAL CASES FOR THE WRONGFULLY CONVICTED. Section 2513(e) of title 28, United States Code, is amended by striking "exceed the sum of $5,000" and inserting "exceed $100,000 for each 12-month period of incarceration for any plaintiff who was unjustly sentenced to death and $50,000 for each 12-month period of incarceration for any other plaintiff".

Pub. L. No. 108-405, 118 Stat. 2260, 2293 (effective October 30, 2004).

The Act does not state its temporal reach and neither supports nor undermines the Government's interpretation that the increased damages cap is applicable only to suits based on incarcerations, convictions, or exonerations occurring after the law's effective date. Because the statute contains no "express command," the Court must look to other principles to determine whether the Act would have a retroactive effect if applied in this case. *See Landgraf*, 511 U.S. at 280.

   2.   Application of the *Princess Cruises* Factors Suggests No Retroactive Effect

Over thirty years after *Landgraf*, the Federal Circuit in *Princess Cruises v. United States* drew on *Landgraf*'s teachings to fashion a three-factor test for determining whether a statute has "retroactive effect." *Princess Cruises v. United States*, 397 F.3d 1358, 1364 (Fed. Cir. 2005)

(citing *Landgraf*, 511 U.S. at 270).  The three *Princess Cruises* factors are (1) "the nature and extent of the change of the law"; (2) "the degree of connection between the operation of the new rule and a relevant past event"; and (3) "familiar considerations of fair notice, reasonable reliance, and settled expectations."  *Id.* at 1362-63 (quoting *Landgraf*, 511 U.S. at 270).  The Federal Circuit has made clear that this Court is required to apply the Circuit's test in cases involving the potentially retroactive effect of a change in law.  *See Rodriguez v. Peake*, 511 F.3d 1147, 1153 (Fed. Cir. 2008) (quoting *Princess Cruises*, 397 F.3d at 1362-63) (noting that trial court erred in failing to apply court's three-part test in analyzing retroactivity).  The Court therefore examines the *Princess Cruises* factors to determine whether applying the Justice for All Act in this case would have a retroactive effect.

        *(a) Nature and Extent of the Change of the Law.*  The first factor is "the nature and extent of the change of the law."  *Rodriguez*, 511 F.3d at 1153 (quoting *Princess Cruises*, 397 F.3d at 1362-63 (quoting *Landgraf*, 511 U.S. at 270)) (emphasis omitted).  Here, key aspects of the Act suggest that the burden of the change is not substantial.  Both before and after the enactment of the Justice for All Act, the Government accepted liability for a federal defendant's wrongful conviction and incarceration.  While the new statute increases that liability, the rule does not impose any new duties or create new prohibitions against any form of conduct.  Moreover, the rule change neither burdens any substantive individual rights, imposes new private obligations, nor regulates "primary" conduct.[2]  *Cf. LaFontant v. INS*, 135 F.3d 158, 161 (D.C. Cir. 1998) (noting that new jurisdictional rules do not usually raise retroactivity concerns because they "take[] away no substantive right," do not involve the "rights or obligations of the parties," and because they "regulate secondary rather than primary conduct" (quoting *Landgraf*, 511 U.S. at 274-75) (citations and internal quotation marks omitted)).  In sum, the "the nature and extent of the change of the law" is not particularly substantial.[3]

---

        [2] Primary conduct includes "the actions that gave rise to the suit."  *Steven I. v. Cent. Bucks Sch. Dist.*, 618 F.3d 411, 414 n.7 (3d Cir. 2010).  Here, to the extent that any "action[]" "gave rise to [Mr. Lyons's] suit," it was his wrongful conviction and incarceration.  Section 431 of the Justice for All Act does not regulate primary conduct because it regulates neither the judiciary's approach to trying cases nor the Government's method of prosecuting defendants: the Act merely changes the potential *consequences* of a wrongful conviction.

        [3] In some cases, when considering the "nature and extent of the change of the law" in the context of an agency's regulatory amendment, the Federal Circuit has considered whether the rule change is "substantive" or "interpretative."  *Rodriguez*, 511 F.3d at 1153; *Nat'l Org. of Veterans' Advocates, Inc. v. Sec'y of Veterans Affairs* ("*NOVA*"), 260 F.3d 1365, 1375 (Fed. Cir. 2001).  A "substantive" rule "'effects a change in existing law or policy' which 'affects individual rights and obligations.'"  *Animal Legal Def. Fund v. Quigg*, 932 F.2d 920, 927 (Fed. Cir. 1991) (quoting *Cubanski v. Heckler*, 781 F.2d 1421, 1426 (9th Cir. 1986), *vacated as moot, sub nom. Bowen v. Kizer*, 485 U.S. 386 (1988)).  It appears that the substantive/interpretive distinction is inapplicable outside of the agency rule context.  This is especially true where, as here, the "rule change" is a statutory amendment, which by definition is not merely interpretive.  In this case, for example, the Justice for All Act undoubtedly "effect[s] a change in existing law or policy," *Rodriguez*, 511 F.3d at 1154 (quoting *NOVA*, 260 F.3d at 1375).  However, the Act does not burden "individual rights and obligations": it burdens only the Government.  On the

     *(b) Connection Between Operation of the New Rule and a Relevant Past Event.*  The second factor is "the degree of connection between the operation of the new rule and a relevant past event."  *Princess Cruises*, 397 F.3d at 1365 (quoting *Landgraf*, 511 U.S. at 270).  The Federal Circuit's analysis of this factor has focused on whether a party has "rel[ied] to [its] detriment" on the prior version of the law.  *E.g.*, *Rodriguez*, 511 F.3d at 1155 (holding that there was no "significant connection to past events" where party did not "rely to her detriment on the prior state of the law"); *cf. Zhi Geng Li v. Holder*, 388 F. App'x 45, 48, 2010 WL 2836706, at *2 (2d Cir. 2010) (noting that party asserting impermissible retroactivity in immigration context must generally "demonstrate individualized, subjective reliance upon prior law"); *Khan v. Ashcroft*, 352 F.3d 521, 523 (2d Cir. 2003) (holding that Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") may be applied to aliens whose criminal conduct occurred before AEDPA's enactment because "it cannot reasonably be argued that aliens committed crimes in reliance on" availability of pre-AEDPA relief) (quoting *Domond v. INS*, 244 F.3d 81, 86 (2d Cir. 2001)).

     Here, the Government does not assert that Mr. Lyons's wrongful conviction resulted from reliance on the previous version of § 2513.  It does not, for example, suggest that Mr. Lyons's prosecutors would have refrained from committing *Brady* and *Giglio* violations if they had known about the impending change to § 2513.  And had the Government made such an assertion, it would be wholly implausible.  Absolutely nothing suggests that a statutory $5000 damages cap influenced the district judge, federal prosecutor, jury, or any other executive or judicial actors in any of their functions.  Even assuming that those actors knew of the limit on liability then in place, and further assuming that they even contemplated the cap during the course of their duties, the notion that the terms of § 2513 materially *affected* their actions is farfetched.  The significant personal consequences of taking part in a wrongful conviction—*e.g.*, guilt of conscience, public and professional censure, and, in the event of misconduct, sanctions—surely dwarf the consequences of a defendant's possibly recovering damages from the Government years later.  There was thus "little connection between the operation of" § 2513 and Mr. Lyons's wrongful conviction.

     *(c) Fair Notice, Reasonable Reliance, and Settled Expectations.*  The third factor asks whether the new rule would upset the "familiar considerations of fair notice, reasonable reliance, and settled expectations."  *Princess Cruises*, 397 F.3d at 1363 (quoting *Landgraf*, 511 U.S. at 270).  Like the second factor, this factor considers reliance, but it also focuses on "fairness concerns" and other fundamental rights of individual persons that would be burdened by application of the new rule.  *See id.* at 1366.

---

other hand, as it does not merely "clarify or explain existing law or regulation," the Act is clearly not just an interpretive rule.  *Cf. Rodriguez*, 511 F.3d at 1154 (quoting *NOVA*, 260 F.3d at 1375-76 (holding that regulation clarifying meaning of deceased veteran's survivor's "entitle[ment] to receive" benefits was interpretive rather than substantive)).  For this reason, the substantive/interpretive distinction is ill-suited to a statutory amendment like the Justice for All Act.

This focus on individual rights renders the inquiry inapposite here. Specifically, "statutes that waive the United States's sovereign immunity," as § 2513 does, "do not implicate the concerns of 'fair notice, reasonable reliance, and settled expectations' that undergird the usual presumption against retroactive application."[4] *State Eng'r of State of Nev. v. S. Fork Band of Te-Moak Tribe of W. Shoshone Indians of Nev.*, 339 F.3d 804, 812 (9th Cir. 2003) (quoting *Landgraf*, 511 U.S. at 270). Because only the Government bears the burden of § 2513, no burden on individual rights is implicated. As a result, analysis of the third *Princess Cruises* factor also suggests that applying the Justice for All Act to this case would not constitute a retroactive application of the Act.

In sum, all three *Princess Cruises* factors[5] suggest that application of the Justice for All Act would not have a retroactive effect in this case.[6] The Court therefore concludes that applying the Justice for All Act's $50,000 per-year-of-imprisonment damages cap in this case

---

[4] In general, fundamental rights protected by the federal Bill of Rights, such as due process, apply only to individual persons, not to the federal government. *See EEOC v. Mitsubishi Motor Mfg. of Am., Inc.*, 102 F.3d 869, 871 (7th Cir. 1996) ("The Executive Branch of the federal government does not have rights under the first amendment."); David A. Koplow, *Arms Control Inspection: Constitutional Restrictions on Treaty Verification in the United States*, 63 N.Y.U. L. REV. 229, 291 (1988) ("The national government itself has no constitutional rights . . . ."); *cf. Landgraf*, 511 U.S. at 270 ("The presumption against statutory retroactivity has consistently been explained by reference to the unfairness of imposing new burdens on *persons* after the fact." (emphasis added)).

[5] Even if the Court were to consider the first factor as implying such an effect, the factors as a whole would still weigh against a retroactive effect. *Cf. Parkdale Int'l v. United States*, 475 F.3d 1375, 1379 (Fed. Cir. 2007) (finding no retroactive effect where the first factor suggested a retroactive effect, but "the remaining two *Landgraf* factors align[ed] heavily against it").

[6] Even if the *Princess Cruises* factors suggested a different result, it is uncertain whether *any* statute can have a "retroactive effect" where, as here, the statute took effect before the lawsuit in question commenced. As the Federal Circuit articulated in *Rodriguez*, "[i]f, under th[e] [three-part] test, a rule or regulation appears to have a retroactive effect, then the rule or regulation cannot be applied *to cases pending at the time of its promulgation*." *Rodriguez*, 511 F.3d at 1153 (emphasis added). The court says nothing about whether the rule can be applied to cases that depend on facts that occurred before the rule or regulation's promulgation. Here, Mr. Lyons's case was not "pending at the time of [the Act's] promulgation." The suit was not commenced until September 16, 2010, approximately six years after the increase in the damages cap. Moreover, Mr. Lyons's innocence, a statutory prerequisite for relief under 28 U.S.C. § 2513 and 28 U.S.C. § 1495, was not determined until July 2010, over five years after the Act took effect. Although his conviction and imprisonment pre-date the Act's promulgation, "a statute is not made retroactive merely because it draws upon antecedent facts for its operation." *Landgraf*, 511 U.S. at 270 n.24 (internal quotation marks omitted). *But see Block v. Sec'y of Veterans Affairs*, No. 2010-7045, 2011 WL 1419638, at *5 (Fed. Cir. Apr. 14, 2011) (concluding that where cause of action accrued before 1979 and suit commenced in 2010, retroactive application of 1988 jurisdictional statute was inappropriate).

would not give retroactive effect to the Act.[7]  Therefore, the statutory construction principles described in *Bradley* and its progeny suggest that the Court should apply the "law in effect at the time it renders its decision," *i.e.*, the Justice for All Act.  *See Bradley*, 416 U.S. at 711; *cf. Berman v. Schweiker*, 713 F.2d 1290, 1297 (7th Cir. 1983) (concluding purpose of the Equal Access to Justice Act required payment of attorneys' fees for work done prior to effective date of statute).

> B.      *In Passing the Justice for All Act, Congress Waived Sovereign Immunity for Claims Like Mr. Lyons's*[8]

Despite the lack of retroactive effect, because the Justice for All Act increases the Government's monetary liability, its application implicates sovereign immunity.[9]  *See Sterling Fed. Sys., Inc. v. Goldin*, 16 F.3d 1177, 1185 (Fed. Cir. 1994).  To determine whether Mr. Lyons's claim is within the scope of the sovereign immunity waiver contained in the Act, the Court must first determine when Mr. Lyons's claim for damages accrued.

---

[7] Given the Court's conclusion that the Act would not operate retroactively if applied here, the Court need not reach the question of whether there was "clear congressional intent favoring" retroactive application.  *See Landgraf*, 511 U.S. at 280.

[8] Except for defendant's noting that "any statutory waiver of sovereign immunity must be strictly construed" in its reply brief, Def.'s Reply Br. at 13, the parties have not briefed the sovereign immunity issue.  Nonetheless, wavier of sovereign immunity is a prerequisite to subject matter jurisdiction that may be raised *sua sponte* at any phase of litigation.  *Presidential Gardens Assocs. v. United States ex rel. Sec'y of Housing & Urban Dev.*, 175 F.3d 132, 140 (2d Cir. 1999) (citing *Louisville & Nashville R.R. v. Mottley*, 211 U.S. 149, 151 (1908)) ("[T]he Government's past failure to raise the defense of sovereign immunity in no way prevents this Court from considering the issue now.").

[9] The Tucker Act, 28 U.S.C. § 1491, partially waives the federal government's sovereign immunity and vests jurisdiction in the Court of Federal Claims over certain monetary claims against the United States, including those based on federal statutes mandating compensation by the federal government for damages sustained.  *Taylor v. United States*, 80 Fed. Cl. 376, 379 (2008) (citing *United States v. Testan*, 424 U.S. 392, 400 (1976)).  The Tucker Act is jurisdictional, and "any grant of a right of action must be made with specificity."  *Testan*, 424 U.S. at 400.  Any asserted entitlement to money damages depends on whether the federal statute in question "'can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained.'"  *Id.* (quoting *Eastport S.S. Corp. v. United States*, 372 F.2d 1002, 1009 (Ct. Cl. 1967); *Mosca v. United States*, 417 F.2d 1382, 1386 (Ct. Cl. 1969)).  Congress has waived the Government's sovereign immunity from a claim for up to $50,000 per year of wrongful imprisonment only if the Justice for All Act "can fairly be interpreted as mandating" compensation up to that statutory maximum on the facts of this case.  The Court concludes that the Act can, and should, be so interpreted.

1.      Mr. Lyons's Claim Accrued When a Judge Concluded He Was Actually Innocent

A claim against the Government accrues when "all the events have occurred which fix the liability of the Government and entitle the claimant to institute an action."  *Goodrich v. United States*, 434 F.3d 1329, 1333 (Fed. Cir. 2006) (quoting *Hopland Band of Pomo Indians v. United States*, 855 F.2d 1573, 1577 (Fed. Cir. 1988)).  In cases involving the statute of limitations applicable to filing a claim in this Court, "a cause of action against the government has 'first accrued' only when all the events which fix the government's alleged liability have occurred and the plaintiff was or should have been aware of their existence."  *Hopland*, 855 F.2d at 1577 (emphasis omitted).  In other words, "a claim has accrued when the last event transpires that gives plaintiff a cause of action."  *Adams v. United States*, 46 Fed. Cl. 834, 838 (2000).

The events that needed to transpire to give Mr. Lyons a cause of action are set forth in § 2513; as is relevant here, Mr. Lyons had to show that (1) his conviction was "reversed or set aside on the ground that he is not guilty of the offense of which he was convicted," and (2) "[h]e did not commit any of the acts charged."  § 2513(a).   Subsection (b) of the statute sets forth the method of proving these facts in the Court of Federal Claims, namely, "by a certificate of the court or pardon wherein such facts are alleged to appear, and other evidence thereof shall not be received."  § 2513(b); *Bolduc v. United States*, 72 Fed. Cl. 187, 192 (2006).

In a nonprecedential disposition, *Bolduc v. United States*, the Federal Circuit concluded that a cause of action under § 2513 accrued at the time the district court issued a conviction-vacating order showing that the conviction was reversed on the grounds that the defendant was not guilty.  248 F. App'x 162, 164-65 (Fed. Cir. 2007) (nonprecedential disposition).  Specifically, because "the order vacating Bolduc's judgment stated that [another suspect] had confessed to the crimes of which Bolduc had been convicted, that there was evidence that [that suspect's] confession was genuine, and that Bolduc had no connection to [the suspect]," then "Bolduc could therefore allege that this order was entered on the ground that he was not guilty."  *Id.* (internal citations and quotation marks omitted).  At that time, Bolduc could assert that he did not commit the acts charged and that a court had made the requisite findings under § 2513(a).  The Federal Circuit therefore noted that under these circumstances "[t]he date upon which his certificate of innocence was issued has no bearing."  *Id.*

But Mr. Lyons is in a different situation.  His conviction was set aside in 2004 on the grounds of governmental misconduct, not because the court concluded that Mr. Lyons was innocent.  The court vacating the conviction found only that "the Government committed *Brady* and *Giglio* violations material to all remaining counts in this case, and the Government's unwarranted denials and delay prejudiced Lyons and the judicial process to such a degree that dismissal of the remaining counts is appropriate."  *Lyons*, 352 F. Supp. 2d at 1252.  In other words, in 2004 the district court found only that the Government's case against Lyons was fraught with ethical violations and that those violations deprived Lyons of a fair trial.  The district court did not imply that Lyons was innocent; at most, the court suggested that there was a reasonable probability that a jury would not have convicted him absent prosecutorial ethical violations.  *Id.* at 1245-46.  The Government not only vigorously opposed dismissing the charges, but in subsequently protesting Mr. Lyons's request for a certificate of innocence, insisted that although there had been prosecutorial wrongdoing, Mr. Lyons was nonetheless still

guilty on all but one of the counts.  *Id.*  Thus, it was not until July 20, 2010, that Mr. Lyons obtained a court finding that he was "actually innocent of the charges brought against him." *Lyons*, 726 F. Supp. 2d at 1369.

Because Mr. Lyons (unlike Mr. Bolduc) could not possibly have shown that "[h]is conviction ha[d] been reversed or set aside on the ground that he [was] not guilty of the offense of which he was convicted" prior to 2010, his claim did not accrue until that time.  § 2513(a)(1). *Cf. Wood v. United States*, 91 Fed. Cl. 569, 578-79 (2009) (Miller, C., J.) ("While the judgment does certify that plaintiff's conviction was reversed, it does not affirm that plaintiff did not commit any of the acts charged or that plaintiff's actions in connection with the charge did not constitute an offense against the United States or any state. . . . 'On its face, the [judgment] is wholly inadequate for the purposes for which it is offered.'" (citing *Humphrey v. United States*, 52 Fed. Cl. 593, 597 (2002))).  Mr. Lyons's claim under § 1495 therefore accrued on July 20, 2010, over five years after Congress enacted the Justice for All Act.

2.    The Scope of the Immunity Waiver

Waivers of sovereign immunity must be "construed strictly in favor of the sovereign." *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 685 (1983) (quoting *McMahon v. United States*, 342 U.S. 25, 27 (1951)); *accord United States v. Nordic Village Inc.*, 503 U.S. 30, 34 (1992). Therefore, courts should take care not to enlarge waivers of immunity "beyond what a fair reading of the language of the [provision] requires."  *Ruckelshaus*, 463 U.S. at 686.  That said, the rule requiring strict construction of waivers of sovereign immunity "is not a talisman that permits the government to avoid liability in all cases," *Sterling Fed. Sys.*, 16 F.3d at 1185, and "[o]nce Congress has waived sovereign immunity over certain subject matter, [a court] cannot 'assume the authority to narrow the waiver that Congress intended,'" *Jones v. Brown*, 41 F.3d 634, 638 (Fed. Cir. 1994) (quoting *United States v. Kubrick*, 444 U.S. 111, 118 (1979)).  In other words, a court should not, "as a self-constituted guardian of the Treasury import immunity back into a statute designed to limit it."  *Indian Towing Co. v. United States*, 350 U.S. 61, 69 (1955); *accord Franconia Assocs. v. United States*, 536 U.S. 129, 145 (2002) (rejecting government's "unduly restrictive" reading of sovereign immunity waiver); *In re Town & Country Home Nursing Servs., Inc.*, 963 F.2d 1146, 1151 (9th Cir. 1991) ("It is well established that when the federal government waives its immunity, the scope of the waiver is construed to achieve its remedial purpose.").

Here, the plain language of the Justice for All Act, as well as its legislative history, indicates that Congress intended to allow recovery up to the statute's monetary caps by any plaintiff whose claim for damages under § 2513 accrued after Congress had waived immunity and the Act took effect.  *Cf. Prisco v. Talty,* 993 F.2d 21, 26 (3d Cir. 1993) (holding that Congress's 1984 restoration of sovereign immunity against certain tort actions, which did not expressly state whether it applied retroactively, did not bar a claim that accrued in 1983, as Government lacked immunity *when claim accrued*).  Nothing in the Act suggests Congress's intent to exclude an entire class—*i.e.*, those already unjustly convicted—of eligible claimants from its benefits.  This is true for four reasons:  (1) the Act's lack of retroactive effect; (2) an alternative interpretation would require arbitrary line-drawing; (3) the Act's remedial purpose requires it; and (4) legislative history suggests that that result was Congress's intent.  These reasons are discussed in turn.

*(1) Lack of Retroactive Effect*.  First, while not dispositive on the issue of sovereign immunity, the analysis in Section III.A.2 above shows that applying the Justice for All Act to claims like Mr. Lyons's implicates no retroactive effect.  *See, e.g.*, *Block*, 461 U.S. at 283 (implying that a "retroactive effect" exists only where a claim accrued before the law took effect).  Where Congress intends for a newly enacted statute to apply to pending litigation, *i.e.*, retroactively, we expect Congress to state as much.  But where, as here, the statute would have no retroactive effect, it would be superfluous and unnecessary for Congress to state, for example, that the Act applies to all claims accruing after its effective date.

Defendant provides no authority suggesting that congressional waivers of sovereign immunity lack prospective applicability—*i.e.*, application to claims accruing after the waiver took effect—merely because some events giving rise to the claim predated the waiver.  The Court is aware of only contrary authority.  *See Franconia Assocs.*, 536 U.S. at 145; *Portland Tug & Barge Co. v. United States*, 90 F. Supp. 593, 594 (D. Or. 1949) (holding that the implicit "contemplation of the act [was] that damage prior to [act's effective] date would be recognized").  Although some events giving rise to Mr. Lyons's claim for damages occurred before the Justice for All Act took effect, his claim did not accrue until over five years after Congress waived the Government's immunity against a claim for $50,000 per year of wrongful incarceration.

*(2) Arbitrariness*.  Second, any alternative reading would appear to flout congressional intent by arbitrarily restricting the scope of the waiver.  Defendant argues only that the Justice for All Act does not apply to Mr. Lyons; it offers no principled reading of the statute consistent with its language and purpose.  As such, it is unclear whether defendant's interpretation would apply the Act only to: (1) defendants who had already been convicted but whose conviction had not yet been reversed when the law took effect; (2) defendants who had not yet been convicted when the Act took effect; (3) defendants who had not yet been charged; (4) defendants whose alleged criminal conduct (or the resulting criminal investigation) had not yet commenced; or (5) some other group.[10]  Whichever of these rules defendant means to suggest, choosing any of them would involve arbitrary line-drawing that the Act itself in no way implies.

 *(3) Act's Remedial Purpose and Other Provisions*.  Third, how § 431 interacts with other provisions of the Justice for All Act lends additional support to the notion that Congress intended the Act's damage caps to apply to any claim accruing after the law took effect.  Under defendant's apparent approach, the 2004 damages provision would not benefit anyone whose charged criminal conduct occurred before October 30, 2004.  In other words, as plaintiff notes, persons whose convictions were overturned as a result of the Act's DNA testing provisions, Tit. IV, § 411 ("§ 411"), 118 Stat. at 2284 (2004) (codified at 18 U.S.C. § 3600 (2006)), would be denied the Act's remedial benefits.  This reading would undermine one of the key "remedial purpose[s]" of the Act as a whole, a result that Congress surely did not intend.  *See Town & Country Home Nursing Servs.*, 963 F.2d at 1151.

---

[10] Adopting the fourth alternative would appear to require the court to conduct a trial in which it would receive evidence and resolve factual disputes over the exact timing of the (nonexistent) criminal conduct, a mode of proceeding not permitted by the statute.

Defendant cites *Immigration & Naturalization Service v. St. Cyr*, 533 U.S. 289, 318-19 (2001), in arguing that because other provisions of the Act contain specific temporal limitations, Congress did not intend § 2513 to apply to cases like Mr. Lyons's.  *See* Tit. II, § 204 ("§ 204"), 118 Stat. at 2271 (2004) (codified at 18 U.S.C. § 3297 (2006)) ("The amendments made by this section shall apply to the prosecution of any offense committed before, on, or after the date of the enactment of this section if the applicable limitation period has not yet expired."); § 411 (noting that provision applies to "any offense committed, and to any judgment of conviction entered, before, on, or after [the] date of enactment").  Defendant notes that § 431 lacks any such language.

At the outset, *St. Cyr* does not, as defendant suggests, state that the Court must regard the existence of specific temporal specifications in the Act's other provisions, *i.e.*, §§ 204 and 411, as dispositive of whether to apply § 431 in this case.  Rather, the *St. Cyr* Court observed that Congress's indicating "its intention to apply specific [other] provisions retroactively" foreclosed that Congress had expressly prescribed the statute's temporal reach.  533 U.S. at 318-19.  Having so determined, the *St. Cyr* Court proceeded to the second step of the analysis (as the Court has done above in assessing retroactivity), considering whether the new rule would have "retroactive effect" under applicable law.  *Id.* at 319.  In other words, *St. Cyr* makes clear that Congress's failure to prescribe a provision's temporal scope—even where Congress has done so with respect to other provisions in the same statute—does not end the inquiry.  Rather, it merely requires the court to probe more deeply into the nature and purpose of the rule change in question.

Moreover, the other provisions of the Justice for All Act that defendant cites, §§ 204 and 411, are materially different from § 431.  First, § 204 has an entirely different purpose:  rather than giving rights to defendants, it takes them away, subjecting federal defendants to greater criminal jeopardy by tolling the statute of limitations for certain crimes.  For this reason, it made sense for Congress to state that § 204 applies to crimes already committed and whose limitations periods are already running.  Not only is it not apparent on its face that § 204 would affect such limitations periods, but without that statement, given that the provision reduces a fundamental right of the accused, the most logical reading might well have yielded a different conclusion.

Section 411 is also materially different from § 431.  Section 411 provides those sentenced to imprisonment for federal crimes the right to challenge their convictions using DNA evidence. § 411 ("Upon a written motion by an individual under a sentence of imprisonment . . . , the court that entered the judgment of conviction shall order DNA testing . . . .").  Section 431 causes a total of just thirty-one words to be substituted into an existing statutory provision, § 2513(e), and merely increases the compensation levels applicable to claims under §§ 1495 and 2513; it creates no new rights, obligations, programs, or procedures whatsoever, and it does not create any cause of action.  Section 411, on the other hand, creates an entirely new federal program that provides federal prisoners with new substantive rights.  It effectively creates a cause of action where none existed before.  It is not surprising that Congress believed it prudent to specify when those new rights would become effective.

*(4) Legislative History*.  The legislative history of the Justice for All Act further suggests that Congress intended that the increase in compensation benefit those persons, like Mr. Lyons, who had already been incarcerated when the cap was increased.  In debating the bill, members of Congress spoke about the need to provide justice to certain individuals who had suffered

wrongful convictions.  For instance, Congressman and Ranking Judiciary Committee Member John Conyers noted that:

> the DNA bill contains a provision—not often mentioned—but of extreme importance to those *that have been subjected to a wrongful conviction*[:] the provision in the bill that increases the maximum amount of damages an individual may be awarded for being wrongfully imprisoned from $5,000 to $50,000 per year.

H.R. Rep. No. 108-711, at 128 (2004) (emphasis added).  Speaking about the entire would-be Justice for All Act, Representative William Delahunt noted that:

> [t]hose charged with false accusations and imprisoned based on wrongful convictions are also victims. . . . Ultimately, this bill is . . . about justice for all victims. And it's about innocent people like . . . Kirk Bloodsworth [(who had previously been wrongfully convicted and later cleared of the charges)].

*Id.* at 130-31.

Finally, a substantively identical predecessor bill, the Innocence Protection Act of 2002, S. 486, 107th Cong. (2001), was introduced in the Senate in 2001.  As part of that act's legislative history, the Committee on the Judiciary submitted a report, which, among other things, recounted the story of men such as Michael Graham, Albert Burrell, and Calvin Johnson, all of whom had been wrongfully convicted in state court, spent years in prison, were eventually freed, but were ultimately denied any compensation. S. Rep. No. 107-315, at 35-37 (2002).  The report states that "[p]utting one's life back together after such an experience is difficult enough, even with financial support. . . . To help repair the lives that are shattered by wrongful convictions, the bill raises the Federal cap on compensation . . . ."  *Id.* at 37.

The legislative history therefore implies that when Congress waived sovereign immunity against claims for up to $50,000 per year of wrongful incarceration, it envisioned that the change would affect people like Messrs. Bloodsworth, Graham, Burrell, and Johnson, who had already been convicted, incarcerated, and released before the compensation cap was raised.  Nowhere in the legislative history does Congress suggest that the Act was intended to exclude this class of people from its benefits.

In sum, defendant's restrictive interpretation of § 2513 would contravene the Supreme Court's direction not to "assume the authority to narrow the waiver that Congress intended," *Kubrick*, 444 U.S. at 118.  To give it defendant's interpretation would not construe the waiver "strictly"; it would "import immunity back into a statute designed to limit it."  *See Indian Towing Co.*, 350 U.S. at 69.  Consistent with the Federal Circuit's analysis in *Jones*, § 1495 and the Justice for All Act constitute "an unequivocal expression of the government's consent to be sued," *Jones*, 41 F.3d at 638.  If Congress had intended to exclude from that waiver claimants who had already been charged or convicted, "it could have used language to that effect."  In other words, everything about the Act indicates that Congress intended to waive sovereign immunity—at a minimum—for claims accruing on or after the Act's effective date of October 30, 2004.

As discussed above, Mr. Lyons's claim did not accrue until July 20, 2010, over five years after Congress waived sovereign immunity by enacting the Justice for All Act.

## CONCLUSION

There are no genuine issues of material fact with respect to the applicability of the cap on damages.  The Court concludes that the damages cap of $50,000 per year of imprisonment set forth in § 2513 applies to this case, and that plaintiff is entitled to judgment as a matter of law on that issue.  Therefore, plaintiff's motion for partial summary judgment is **GRANTED**, and defendant's motion for partial summary judgment is **DENIED**.  Within ten days of the date this opinion is filed, the parties shall file a joint status report describing the parties' views on the nature and timing of further proceedings looking toward resolution of the remaining issue in this case, *i.e.*, plaintiff's damages.

**IT IS SO ORDERED**.

 s/ George W. Miller
GEORGE W. MILLER
Judge